UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ST. JOHNS RIVERKEEPER, INC.,

      Plaintiff,

vs.

BERMAN BROS., INC.,

      Defendant.

Civil Case No.:  3:22-cv-892-MMH-JBT

## STIPULATED CONSENT JUDGMENT

THIS MATTER comes before the Court upon Plaintiff St. Johns Riverkeeper Inc.'s First Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties ("FAC") under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq., against Defendant Berman Bros., Inc. ("Berman Bros."), (Dkt. 6), and the Parties' stipulation to the entry of a consent judgment. (Dkt. 18) Upon consideration and review, the Court determines that the parties' Stipulated Consent Judgment (Dkt. 18), is due to be APPROVED. This Order is entered on the STIPULATION of the parties and is entered to fully resolve the issues raised in this action.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation, the parties have reached a settlement of this matter, including the terms set forth below. Defendant denies committing any of the alleged violations

contained in the FAC. This Order is not an admission of liability by Defendant nor a concession by the Plaintiff that its claims are not well founded.

NOW, THEREFORE, without adjudication or admission of any issue of fact or law, and with the consent of the parties, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. **Jurisdiction.** For the purposes of this Order, the Parties stipulate that the United States District Court, Middle District of Florida, has jurisdiction over the Parties and subject matter of this Order pursuant to 33 U.S.C. § 1251, et seq. [handwritten: the Court independently finds that it has jurisdiction over the] [handwritten initials: MMH] The Parties stipulate that venue is appropriate in the Middle District of Florida and that the Parties have standing to bring any subsequent action or motion pursuant to the Dispute Resolution procedures herein.

2. **Effective Date.** This Order becomes effective on the date signed and entered by the Court, and follows the requisite forty-five (45) day review period by the United States Environmental Protection Agency and the United States Department of Justice under section 505(c)(3) of the Clean Water Act, 33 U.S.C. § 1365(c)(3).

3. **Term of Stipulated Consent Judgment.** Unless an extension is agreed to in writing by the Parties consistent with Paragraph 28, this Order shall [handwritten: and approved by the Court upon the filing of a proper motion] [handwritten initials: MMH] continue in effect until December 31, 2025 (the "Termination Date"), at which time the Order, and all obligations under it, shall automatically terminate, unless one of the Parties has invoked Dispute Resolution in accordance with Paragraph 22.

4.     For purposes of this Order, Defendant stipulates that the FAC states claims upon which relief can be granted pursuant to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq. ("Clean Water Act"). The FAC alleges that Defendant violated at its facility located at 2500 Evergreen Ave. in Jacksonville, FL 32206 ("Facility") several requirements of Florida's Multi-Sector Generic Permit, a National Pollution Discharge Elimination System ("NPDES") permit issued by the Florida Department of Environmental Protection ("DEP") under the authority of Florida Statute Section 403.0885, which authorizes Florida to implement the NPDES program pursuant to authority delegated to the State of Florida by the United States Environmental Protection Agency ("EPA"). Pursuant to Florida Administrative Code ("F.A.C.") Rule 62-621.300(5)(a), Florida adopted the EPA's Multi-Sector General Permit issued on September 29, 1995 (60 Fed. Reg. 50804) and subsequent corrections and modifications as amended on February 9, 1996 (61 Fed. Reg. 5248), February 20, 1996 (61 Fed. Reg. 6412), August 7, 1998 (63 Fed. Reg. 42534), September 30, 1998 (63 Fed. Reg. 52430), and January 19, 1999 (64 Fed. Reg. 2898) (hereinafter collectively referred to as the "MSGP").

5.     **Compliance with MSGP.**  Berman Bros. agrees to operate the Facility in compliance with the applicable requirements of the MSGP and the Clean Water Act.

6.     Historic Activities in Facility Watershed. In the period between 1940-1950, a lead smelting facility operated on a portion of the site where the Facility is

located. The watershed surrounding and upstream of the Facility was primarily occupied by single-family homes. The lead smelting operation disbursed waste, including metals, over a large area adjacent to the operation. The site where the Facility is located was acquired by Berman Bros. when it began its operations in 1959. Subsequently, soils at the site of the Facility were remediated to residential standards as prescribed by DEP. The surrounding lands upstream from the Facility retain remnant metals in the soils consistent with metals disbursed from the former lead smelting facility, which because of the topography in the local drainage basin, causes stormwater flows with elevated levels of pollutants to flow onto the Facility site during significant rainfall events. This problem is exacerbated by lack of maintenance of drainage ditches in the local drainage basin that cause runoff from the properties to either discharge onto the Facility site or to back up into the Facility site, conditions over which Berman Bros. has no direct control.

7.     **Implemented Structural and Non-structural Best Management Practices.**  Subsequent to the receipt of the 60-Day Notice Letter and prior to the entry of this Order, Berman Bros. implemented additional control measures and best management practices ("BMPs") at the Facility, in order to address the quality of any stormwater discharges generated from its activities on the Facility site, set forth as follows:



a.     Implemented a steel rumble rack inside at of the Facility's exits.

b.      Installed concrete apron between the rumble rack at the 18th Street exit from the Facility.

c.      Removed outdoor flammable lockers from the property.

d.      Implemented an approximately 295′ long berm consisting of compacted sand pushed against a series of concrete Jersey barriers between the shred pile and the western perimeter in the southern portion of the Facility.

e.      Implemented an approximately 150′ long berm consisting of compacted sand pushed against a series of concrete Jersey barriers along the wall north of the wall that abuts the railroad tracks that split the two main parcels of the Facility.

f.      Performed grading and implemented a Filtrexx SiltSoxx check dam in the swale leading to Sample Point 3.

g.      Implemented a Filtrexx SiltSoxx check dam in the swale south of the scale and in proximity to the western perimeter in the southern portion of the Facility.

h.      Implemented an approximately 205′ long row of concrete Jersey barriers and Filtrexx SiltSoxx east of the shred pile and along the western edge of the swale leading to Sample Point 4.

i.      Removed obsolete equipment no longer being used from several areas throughout the Facility.

j.   Implemented concrete barriers to contain materials in the aluminum sorting area.

k.   Began storing drums at the storage building at the south end of the Facility.

l.   Implemented maximizing available storage of empty roll-off containers under cover at the southern perimeter of the Facility.

m.   Implemented a practice to store any roll-offs with electric motors under cover.

MMH

n.   Moved a lined-roll-off container with oily waste from the container storage area to a covered warehouse.

o.   Implemented a rain gauge capable of continuously recording rainfall at the Facility to 0.01 inches.  Berman Bros. shall maintain the rain gauge in accordance with manufacturer's recommendations and maintain records of all maintenance.

8.   **Creation of Engineered Outfall.**  By September 30, 2023, Berman Bros. shall engineer a new stormwater sampling structure at the present location of Outfall 3. Berman Bros. shall re-grade the Facility such that all stormwater flows (including run-on flows) past the scale house flow towards Outfall 3. Berman Bros. shall also ensure that no off-site stormwater flows enter this location from the Facility's western perimeter. Within two (2) weeks of implementation of the above

measures, Berman Bros. shall provide Plaintiff with sufficient digital photos to confirm said implementation.

9. **Implemented Stormwater Controls.** Berman Bros. shall maintain in good working order all BMPs at the Facility currently installed or to be installed pursuant to this Order.

10. **Actions Addressing Secondary Activities Potentially Covered as Sector P Activities.** Within sixty (60) days of the Effective Date, Berman Bros. shall perform the following actions:

 a. Amend its Notice of Intent to use the MSGP to show SIC Code 4214 as a secondary industrial activity at the Facility, and submit same to DEP.

 b. Amend the Facility's Stormwater Pollution Prevention Plan ("SWPPP") and monitoring plan, consistent with the requirements below in Paragraph 13, to comply with the MSGP's requirements for Sector P facilities related to fueling and vehicle maintenance activities at the Facility, and submit same to DEP.

11. **Implemented Enhancements to Stormwater Monitoring and Reporting.** Subsequent to the receipt of the 60-Day Notice Letter and prior to the entry of this Order, Berman Bros. implemented the following additional enhancements to the Facility's stormwater monitoring and reporting program:

 a. Included additional stormwater sampling locations.

b.      Revised Site Map.  Berman Bros. revised the Facility's site maps as follows:

i.      Modified the boundary to reflect the entirety of the property configuration based on the property appraiser's map.

ii.      Labeled additional locations where significant materials are exposed to precipitation including scrap material storage and outdoor scrap processing equipment.

iii.      Indicated the locations of the diesel fueling station, the maintenance shop, and the loading dock.

iv.      Labeled additional stormwater sampling points.

v.      Indicated the locations of spill kits.

vi.      Labeled the locations of tanks and vessels.

vii.      Labeled the locations of implemented berms.

viii.      Included a legend and a compass.

ix.      Labeled stormwater conveyances throughout the Facility and revised the direction of surface flow.

x.      Indicated where potential discharges from the retention pond are discharged.

c.      Revised sampling protocols to ensure that the only stormwater discharge samples collected at Outflow #2 are those that flow over the weir in the pond.

12.    **Additional Stormwater Monitoring.**  Berman Bros. shall perform the monitoring described herein during the term of this Order.

a.    **Visual Monitoring of Storm Events.**  During each quarter beginning with July 2023 (i.e. Q3 2023) and ending with June 2024 (i.e. Q2 2024), Berman Bros. shall conduct visual monitoring of all storm events greater than 1.0" in magnitude as recorded by the Facility's rain gauge, occurring during normal business hours. Such monitoring shall occur along the perimeter of the Facility, at the Facility's sampling points, and at the two driveways associated with the northern portion of the Facility west of Sample Point #2. Berman Bros. shall record digital videos at both the entrance and the exit of the Facility from at least two such storm events per quarter, to the extent that such events occur. In addition, to the extent that the Facility is discharging storm water from the Facility from any storm events, Berman Bros. shall record digital videos of the discharge. Berman Bros. shall submit copies of said videos to St. Johns Riverkeeper within thirty (30) days of the end of each quarter in which the videos were recorded or otherwise communicate to St. Johns Riverkeeper that no such videos were recorded during the particular quarter.

b.    **Collection of Storm Water Samples.**  During each quarter of the period of July 1, 2023 – June 30, 2024, and the period of July 1, 2024 – June 30, 2025 (hereby referred to as "Annual Monitoring Period(s)"), Berman Bros. shall 

collect and analyze storm water discharges from Sample Points 2, 3, and 4 consistent with the following requirements:

    i.  No less than two times per quarter, Samples shall be collected only from discharges that are from storm events greater than 0.1 inches in magnitude, occur at least 72 hours from the previously measurable (greater than 0.1 inch) storm event (provided sufficient runoff exists at the sampling points to collect samples) occurring during normal business hours, and that do not commingle with off-site run-on.

    ii.  A laboratory shall analyze the samples in accordance with the protocols for stormwater analysis set forth in the MSGP for Sector N facilities.

    iii.  Results from the Facility's sampling and analysis during the term of this Order shall be provided to St. Johns Riverkeeper within thirty (30) days of receipt by Berman Bros.

13. **Amendment of Stormwater Pollution Prevention Plan.** Within sixty (60) days after the District Court's entry of this Order, Berman Bros. shall amend the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this Order. Berman Bros. shall ensure that the SWPPP describes all structural and non-structural BMPs

and details the measures to be installed. Berman Bros. shall provide a copy of the amended SWPPP to St. Johns Riverkeeper within thirty (30) days of completion.

14.     **Provision of Documents and Reports.**  During the life of this Order, Berman Bros. shall provide Plaintiff with a copy of all documents submitted to or received from the DEP concerning the Facility's stormwater discharges. Such documents and reports shall be provided electronically to Plaintiff within thirty (30) days of submission to or receipt from such agency. Within ten (10) days of a request made by Plaintiff, Berman Bros. also shall provide electronically to Plaintiff a copy of any logs referenced in this Order.

15.     **Meet and Confer Regarding Sampling Results and Additional BMPs.**

        a.     If any analytical results from stormwater samples collected from the Facility during either of the two Annual Monitoring Periods contain levels of pollutants in excess of the cut-off concentrations set forth in the MSGP for Sector N ("Benchmark Values"), Berman Bros. agrees to evaluate potential actions to improve its stormwater management practices to conform with the MSGP's and Clean Water Act's requirement to apply the best available technology economically achievable ("BAT") for toxic and non-conventional pollutants, and the best conventional pollutant control technology ("BCT") for conventional pollutants. This includes re-evaluating its structural and non-structural BMPs, evaluating and/or implementing

stormwater treatment or retention systems, and evaluating and/or implementing additional BMPs aimed at reducing contaminant concentrations observed in stormwater samples.

b.  In furtherance of that objective, Berman Bros. shall prepare a written statement ("BMP Evaluation") that includes the following:

MMH

i.  A discussion of any result where the pollutant level a particular outfall is higher than a Benchmark Value;

ii.  An explanation of the possible cause(s) and/or source(s) of any result where the result for a particular outfall is higher than the Benchmark Value; and

iii.  Identification of responsive BMPs that Berman Bros. will implement to improve the Facility's stormwater management practices to reduce the possibility of future stormwater sampling results higher than the Benchmark Values.

c.  Should a BMP Evaluation be required, such BMP Evaluation

MMH shall be e-mailed to Plaintiff no later than two months days subsequent to the termination of either of the two periods in Paragraph 12(b) (i.e. August 31, 2024, or August 31, 2025).

d.  Any new BMPs identified for implementation in a BMP Evaluation shall be implemented as soon as practicable. Within thirty (30)

days of implementation, the Facility's SWPPP shall be amended to include all additional BMP measures designated in the BMP Evaluation.

e.     **BMP Evaluation Review.** Upon receipt of the BMP Evaluation, Plaintiff shall have thirty (30) days to provide Berman Bros. with comments and questions. Within thirty (30) days of receipt of Plaintiff's BMP Evaluation comments, Berman Bros. shall revise its SWPPP to reflect the changes and/or additional BMPs as set forth in the BMP Evaluation Comments or shall explain in writing why any comment is not incorporated. If requested by Plaintiff within thirty (30) days of receipt of such BMP Evaluation, the Parties shall meet and confer to discuss the contents of the BMP Evaluation and the adequacy of proposed BMPs to improve the quality of the Facility's stormwater discharges to conform with the Clean Water Act and MSGP's BAT/BCT requirement. The Parties may agree in writing to extend any dates contained in this subparagraph in order to further this Paragraph's meet and confer procedure.



f.     Any concurrence or failure to object by Plaintiff with regard to the reasonableness of any additional measures required by this Order or implemented by Berman Bros. shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's stormwater discharges into compliance with the BAT/BCT requirement set forth in the Clean Water Act and MSGP.

16.   **Mitigation Payment.**  In recognition of the good faith efforts by Berman Bros. to comply with all aspects of the MSGP and the Clean Water Act, and in lieu of payment by Berman Bros. of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to Berman Bros., the Parties agree that Berman Bros. will pay the sum of thirty-five thousand dollars ($35,000.00) to The Community Foundation for Northeast Florida for the sole purpose of providing grants to environmentally beneficial projects within the St. Johns River Watershed.   Payment shall be provided ~~to the~~ to The Community Foundation for Northeast Florida as follows: A single check shall be sent to The Community Foundation for Northeast Florida, 245 Riverside Ave #310, Jacksonville, FL 32202. The check memo line shall indicate "NE Florida Environmental Conservation Fund." Payment shall be made by Berman Bros. to The Community Foundation for Northeast Florida within fifteen (15) calendar days of the Effective Date. Berman Bros. shall copy Plaintiff with any correspondence and a copy of the check sent to The Community Foundation for Northeast Florida. The Community Foundation for Northeast Florida shall provide notice to the Parties, *the Justice Department, and the Court* within thirty (30) days of when the funds are dispersed, setting forth the recipient and/or purpose of the funds.

17.   **Fees and Costs.**   As reimbursement for Plaintiff's investigative, expert and attorneys' fees and costs, Berman Bros. shall pay Plaintiff the sum of seventy thousand dollars ($70,000). Payment shall be made by Berman Bros.

within fifteen (15) calendar days of the Effective Date. Payment by Berman Bros. to Plaintiff shall be made in the form of a single check payable to the "Public Trust Environmental Legal Institute of Florida, Inc." that can be mailed to 2029 Third Street N, Jacksonville Beach, FL 32250, and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by Plaintiff that have or could have been claimed in connection with Plaintiff's claims, up to and including the Effective Date of this Order.

18.     **Compliance Oversight Costs.**   As reimbursement for Plaintiff's future fees and costs that will be incurred in order for Plaintiff to monitor Berman Bros.' compliance with this Order and to effectively meet and confer and evaluate stormwater monitoring results for the Facility, Berman Bros. agrees to reimburse Plaintiff for its reasonable fees and costs incurred in overseeing the implementation of this Order up to but not exceeding four thousand dollars ($4,000.00) per Annual Monitoring Period. Fees and costs reimbursable pursuant to this paragraph may include, but are not limited to, those incurred by Plaintiff or its counsel to review documents related to the Facility and preparation and participation in meet and confer sessions. At the end of each meet and confer process, Plaintiff shall provide an invoice containing an itemized description for any fees and costs claimed. Up to two payments (one associated with each of the Annual Monitoring Periods) shall be made payable to "Public Trust Environmental Legal Institute of Florida, Inc." that can be mailed to 2029 Third

Street N, Jacksonville Beach, FL 32250, within thirty (30) days of receipt of an invoice from Plaintiff that contains an itemized description of fees and costs incurred by Plaintiff to monitor implementation of the Order during the previous twelve (12) months.

19. **Dismissal.** In consideration of Berman Bros.' agreement to this Order, Plaintiff agrees that all the claims alleged in the FAC and in the Plaintiff's October 15, 2021 60-Day Notice of Violations of Clean Water Act and Notice of Intent to File Suit ("60-Day Notice Letter") through the Termination Date are dismissed with prejudice consistent with the terms and condition of this Order. The settlement of this action as embodied in this Order is fair, reasonable, in the public interest, and furthers the objectives of the Clean Water Act. *The Court retains jurisdiction to enforce the terms of this Order (and stipulated Consent Judgment) up to and including the Termination Date.* *(MMH)*

20. **Mutual Release of Liability and Covenant Not to Sue.** In consideration of the above, and except as otherwise provided by this Order, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors and agents from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which arise or could have arisen from the FAC or 60-Day Notice Letter, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others),

costs, expenses or any other sum incurred or claimed or which could have been claimed in the FAC or 60-Day Notice Letter, for the alleged failure of Defendant to comply with the Clean Water Act at the Facility, up to and including the Termination Date.

21. **No Admission or Finding.** Neither this Order nor any payment pursuant to the Order shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation. However, this Order and/or any payment pursuant to the Order may constitute evidence in actions seeking compliance with this Order.

22. **Dispute Resolution Procedures.** Except as specifically noted herein, any disputes with respect to any of the provisions of this Order shall be resolved through the following procedure. The Parties agree to first meet and confer to resolve any dispute arising under this Order. In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. The Parties shall be entitled to seek reasonable fees and costs incurred in any such action to enforce the terms of this

Order pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

23.     **Impossibility of Performance.** Where implementation of the actions set forth in this Order, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good faith efforts of the Parties, the party who is unable to comply shall notify the other in writing within fourteen (14) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established. In the event that the Parties cannot timely agree upon the terms of such a stipulation, either of the Parties shall have the right to invoke the dispute resolution procedure described herein.

24.     **Construction.** The language in all parts of this Order shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the MSGP, Clean Water Act or specifically herein.

25.     **Choice of Law.** This Order shall be governed by the laws of the United States, and where applicable, the laws of the State of Florida.

26.     **Correspondence.** All notices required herein or any other correspondence pertaining to this Order shall be sent by regular, certified, overnight mail, or email as follows:

If to Plaintiff:

John November
The Public Trust Environmental Legal Institute of Florida, Inc.
2029 3rd Street N.
Jacksonville Beach, FL 32250
(904) 525-3042
john@publictrustlaw.org


If to Berman Bros.:

Wayne Flowers
Lewis, Longman & Walker, PA
245 Riverside Avenue, Suite 510
Jacksonville, FL 32202
wflowers@llw-law.com


Email shall be the preferred method of communication. Notifications of communications shall be deemed submitted on the date that they are emailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

MMH

27.    **Assignment**. Subject only to the express restrictions [, if any,] contained in this Order, all of the rights, duties and obligations contained in this Order shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

28.    **Extension of Deadlines.**  The parties may, at any time, agree to reasonably extend any deadline provided in this order without seeking leave of

MMH

19

the Court. Any such agreement shall not become effective unless and until such

agreement is set out in writing and signed by counsel for both sides.

29.    **Modifications.**   Any changes or modifications to the Order must be

in writing and signed by all parties and ~~entered~~ *approved* by the Court, with the exception

of any extension of deadlines pursuant to Paragraph 28.

30.    The Clerk is **DIRECTED** to **CLOSE** this case.


SO ORDERED, this 26 day of July 2023.


Marcia Morales Howard

MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE


Respectfully submitted,

June 30, 2023


*Copies to:*
*Counsel of Record*
*The Community Foundation for Northeast Florida*
*Attn: John Zell*
*245 Riverside Ave., Suite 310*
*Jacksonville, Fl. 32202*

*FOR PLAINTIFF:*

_____/_____
   Lisa Rinaman, Riverkeeper          (Date)
   St. Johns Riverkeeper

*PLAINTIFF'S COUNSEL:*

/s/_____
John November (FL Bar #88760)
The Public Trust Environmental Legal Institute of
Florida, Inc.
2029 3rd Street N.
Jacksonville Beach, FL 32250
Telephone: (904) 247-1972
Email: john@publictrustlaw.org

*Attorney for Plaintiff ST. JOHNS RIVERKEEPER*

*FOR DEFENDANT:*

_____/ 5/3/23_____
   Rochelle Stoddard, President       (Date)
   Berman Bros., Inc.

*DEFENDANT'S COUNSEL:*

Wayne E. Flowers (FL Bar #207020)
Lewis, Longman & Walker, PA
245 Riverside Avenue, Suite 510
Jacksonville, FL 32202
Telephone: (904) 353-6410
Emwflowers@llw-law.com

*Attorney for Defendant BERMAN BROS., INC.*

21

*FOR PLAINTIFF:*

*Lisa Rinaman*   /   5-3-2023

Lisa Rinaman, Riverkeeper                     (Date)
St. Johns Riverkeeper

*PLAINTIFF'S COUNSEL:*

/s/   *John November*

John November (FL Bar #88760)
The Public Trust Environmental Legal Institute of
Florida, Inc.
2029 3rd Street N.
Jacksonville Beach, FL 32250
Telephone: (904) 247-1972
Email: john@publictrustlaw.org

*Attorney for Plaintiff ST. JOHNS RIVERKEEPER*


*FOR DEFENDANT:*

_____   /   _____

Rochelle Stoddard, President            (Date)
Berman Bros., Inc.


*DEFENDANT'S COUNSEL:*

_____

Wayne E. Flowers (FL Bar #207020)
Lewis, Longman & Walker, PA
245 Riverside Avenue, Suite 510
Jacksonville, FL 32202
Telephone:  (904) 353-6410
Emwflowers@llw-law.com

*Attorney for Defendant BERMAN BROS., INC.*

21